**The STATE of Texas, Appellant,**

v.

**Regina LOTT, Appellee.**

**No. 12–92–00085–CR.**

Court of Appeals of Texas, Tyler.

Dec. 30, 1992.

Amy Blalock, Asst. Dist. Atty., Tyler, for appellant.

Karen Russell, Tyler, for appellee.

Before RAMEY, C.J., and COLLEY and BILL BASS, JJ.

BILL BASS, Justice.

Regina Lott was charged with possession of cocaine, a felony. Lott moved to suppress the evidence of the cocaine found on her person at the time of her arrest on the ground that the cocaine seized was the product of an illegal arrest and search. The trial court granted Lott's motion and the State appeals. We will vacate the order and remand the cause to the trial court.

Officers of the Tyler Police Department conducted a surveillance of suspected drug dealing at the Tyler Courts Motel. The officers conducted their surveillance from one of the cabins or apartments within the small motel. Their attention was primarily focused on Apartment Number 18, occupied by Jimmy Jordan, a known drug dealer. Undercover agents had previously purchased cocaine from Jimmy Jordan at that location.

During the day, the undercover agents observed numerous persons, many of them known drug users, enter Number 18, stay a couple of minutes, and then leave. Some of those leaving Number 18 put the crack cocaine rocks in their mouths, while others divided cocaine rocks on the premises in full view of the undercover officers. Still

others smoked the crack between the cabins, in one instance, only eighteen inches outside the window from which the officers were watching.

While the surveillance operation was in progress, Lott arrived on a motorcycle. She went to Number 18 and knocked on the door. Jimmy Jordan came to the door, and Lott entered and remained inside for perhaps a minute or a minute and a half. She then came out and rejoined her companion who had come with her on the motorcycle. Jordan came out of Number 18, got into his car, and left. Lott and her companion sat on an old car seat near their motorcycle. Jordan returned within fifteen or twenty minutes and re-entered his apartment. Lott also re-entered Number 18 almost immediately thereafter. She remained inside for approximately two minutes, came out and departed on the motorcycle behind the man with whom she had come to the motel. There was no doubt in the minds of the officers observing these events that Lott had just bought drugs and had them in her possession. The undercover agents transmitted by radio a description of the motorcycle and its riders to uniformed officers in the area. They requested that the two persons on the motorcycle be stopped and searched because they had just bought drugs at the motel.

The motorcycle was stopped almost immediately by Tyler Police within a mile of the motel. The riders were separated, and each was asked if they possessed drugs. Lott denied having drugs, but appeared unusually nervous. Sergeant Wells, seeing a little wrapper of paper protruding slightly from her pocket asked, "is that cocaine right there?" When Lott stepped away from the officer, another policeman took hold of her arms. Sergeant Wells then pulled the little wrapper of paper from Lott's pocket. The wrapper contained a rock of crack cocaine.

The State contends that the trial court abused its discretion in granting Lott's motion to suppress the evidence of the crack cocaine because the arrest and search of Lott were based on probable cause.

■ The standard of review governing appellate review of a trial court's ruling on a motion to suppress evidence is whether the trial court abused its discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Cr. App.1985).

The UNITED STATES CONSTITUTION and the TEXAS CONSTITUTION forbid only *unreasonable* searches. *Cannady v. State*, 582 S.W.2d 467, 469 (Tex.Cr.App.1979). What is "reasonable" depends upon the circumstances of each case. *Cooper v. California*, 386 U.S. 58, 59, 87 S.Ct. 788, 789, 17 L.Ed.2d 730 (1967); *Long v. State*, 532 S.W.2d 591 (Tex.Cr.App.1975), *cert. denied*, 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 179 (1976).

■ Probable cause to justify a warrantless search exists when the facts and circumstances within the knowledge of the officer at the scene, including information received from a reasonable trustworthy source, would lead a person of reasonable caution or prudence to believe that he will find an instrumentality of a crime or evidence of a crime. *Washington v. State*, 660 S.W.2d 533, 535 (Tex.Cr.App.1983). Perceived events must be out of the ordinary, suspicious, and tie the suspect with a criminal act. *Lunde v. State*, 736 S.W.2d 665, 667 (Tex.Cr.App.1987). The existence of probable cause should be determined from a consideration of all the relevant circumstances. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause is a fluid concept turning on the assessment of probabilities, and not readily or even usefully reduced to a neat set of rules. *Id.* at 232, 103 S.Ct. at 2329. Probable cause imports a seizure made under circumstances which warrant suspicion. *Id.* at 235, 103 S.Ct. at 2330. Only the probability, and not a *prima facie* showing, of criminal activity is required. *Id.* at 235, 103 S.Ct. at 2330. If probable cause to search exists, a warrant must be obtained unless the procuring of a warrant is impractical. *Washington*, 660 S.W.2d at 535.

■ In this case, there was obviously no opportunity to obtain a warrant because Lott was speeding away on a motorcycle.

The officers knew Jordan as a drug dealer. They had made undercover drug purchases at his cabin. From what they had observed, the police knew that the reason for almost all of the heavy traffic in and out of cabin number 18 was the purchase of drugs. The circumstances attending Lott's visit exclude any possibility that it had a social purpose. She spent the same amount of time in the cabin as those they saw emerging from Jordan's cabin openly handling the cocaine they had just purchased. Lott did not speak with any one else at the motel. She did not remain inside while she was waiting on Jordan's return as might be expected of a friend or social caller. Instead, she remained outside in the July heat. Although the officers engaged in the surveillance did not see the actual delivery of the cocaine from Jordan to Lott, they undeniably had probable cause to believe that a drug sale had been completed between them, and that Lott was in possession of the drugs she had just purchased. An officer is permitted to draw logical inferences and make intelligent deductions from the totality of the circumstances in finding probable cause for a warrantless search. *Jackson v. State*, 745 S.W.2d 4, 10 (Tex.Cr.App.1988), *cert. den'd*, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947; *McGowan v. State*, 792 S.W.2d 155, 158 (Tex.App.—Texarkana 1990, no pet.).

■ Only moments before Lott was detained, the officers who stopped her had been informed by radio by a police officer whom they knew to be conducting the surveillance of the motel that Lott had recently bought drugs at the motel and should be stopped while she still had them in her possession. In determining whether the search of Lott was authorized, an appellate court should scrutinize the collective information in possession of all the officers involved, including the officers making the search. *See Jackson v. State*, 745 S.W.2d at 9; *Evans v. State*, 799 S.W.2d 412, 414 (Tex.App.—Corpus Christi 1990, no pet.). When she was stopped, Lott acted excessively nervous, "like a caged animal, like she had been caught." When asked if the wrapper protruding from her pocket contained cocaine, she responded with an evasive gesture. Considering all of the facts and circumstances known to them, the officers plainly had probable cause to search Lott. The trial court's order suppressing the evidence seized in that search was so clearly erroneous as to constitute an abuse of discretion.

The order suppressing the evidence is vacated and the cause remanded for proceedings consistent with this opinion.